**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**WACO DIVISION**

| | |
|---|---|
| **LIGHTHOUSE CONSULTING GROUP, LLC,** | |
| **Plaintiff,** | **CIVIL ACTION NO. 6:19-cv-00594-ADA** |
| **v.** | |
| **BB&T CORPORATION,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

## PLAINTIFF'S RESPONSE TO DEFENDANT'S MOTION TO DISMISS

Dated: July 9, 2020

By: */s/ Austin Hansley*
**HANSLEY LAW FIRM, PLLC**
Austin Hansley
Texas Bar No.: 24073081
2931 Ridge Rd. STE 101 #530
Rockwall, Texas 75032
Telephone: (972) 528-9321 Ext. 1000
Facsimile: (972) 370-3559
Email: ahansley@hansleyfirm.com
www.hansleyfirm.com
**ATTORNEY FOR PLAINTIFF**
**LIGHTHOUSE CONSULTING GROUP, LLC**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................. ii

I.      NATURE OF THE PROCEEDINGS .................................................................. 1

II.     SUMMARY OF ARGUMENT ........................................................................... 1

III.    STATEMENT OF FACTS ................................................................................... 3

IV.     ARGUMENT ...................................................................................................... 3

   a.   Legal Standard ................................................................................................ 3

   b.   Amendment-based estoppel does not apply. .................................................... 6

   c.   Argument-based estoppel. ............................................................................... 13

   V. CONCLUSION ..................................................................................................... 16

## **TABLE OF AUTHORITIES**

**Cases**

*Aatrix Software v. Green Shades Software*, No. 17-1452 (Fed. Cir. 2018) .................................... 9

*AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1382 (Fed. Cir. 2007) .......... 5, 6

*Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018)................................................................. 9

*Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008) ............................................................. 4

*Exhibit Supply Co. v. Ace Patents Corp.*, 315 U. S. 126, 136-137 (1942) ..................................... 6

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, *344 F.3d 1359*, *1369* (Fed. Cir. 2003).. 7, 11, 14

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002) ............................. 7

*Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950)................................ 5

*Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir. 2002)......... 4

*Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990) ........................ 4

*Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1365 (Fed. Cir. 1983)....................... 11, 12

*Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001)................................................. 4

*Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003)................................ 14

Pioneer Magnetics, Inc. v. Micro Linear Corp., 330 F.3d 1352, 1357 (Fed.Cir.2003) ............ 7, 11

*Ring & Pinion Service Inc. v. ARB Corp.*, No. 13-1238 (Fed. Cir. Feb. 19, 2014) ...... 8, 10, 14, 15

*Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929) ...................................................... 5

*St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991)........................ 4

*Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084, 1090 (Fed.Cir.1998) .............. 5

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997) ............................. 5

**Statutes**

35 U.S.C. § 101 ................................................................................................................ 7

 **Rules**

Fed. R. Civ. P. 12(c)...……………………………………………………………..1, 2, 3, 9, 10, 11, 13

## I.     NATURE OF THE PROCEEDINGS

This is an action for patent infringement filed by Plaintiff Lighthouse Consulting Group, LLC for infringement by Defendant BB&T Corporation of Plaintiff Lighthouse Consulting Group, LLC's U.S. Patent Nos. 8,590,940 and 7,950,698 reissued as RE44,274 (collectively the "patents-in-suit"). This motion response is filed in response to Defendant's motion to dismiss Plaintiff's Original Complaint for failure to state a claim.

## II.    SUMMARY OF ARGUMENT

Infringement under the Doctrine of Equivalents is not barred as a matter of law. Amendment-based estoppel does not apply in this case because the equivalent subject matter is after-arising technology that was unforeseeable at the time of the filing of the patents-in-suit. Furthermore, whether the after-arising technology was unforeseeable at the time of the filing of the patents-in-suit is a question of fact that is not ascertainable from the complaint or the file history and should not be decided by the Court. Whether Defendant's Accused Instrumentality secures a check to an equivalent carrier is a question of fact, not to be decided on a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings. Whether the Defendant's Accused Instrumentality's equivalent carrier is capable of receiving a "plurality of negotiable instruments" is a question of fact, not to be decided on a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings. Whether the Defendant's Accused Instrumentality is capable of generating "one front image and one back image of all the negotiable instruments" is a question of fact, not to be decided on a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings. Additionally, these claim limitations require claim construction in order for the fact finder to be able to ascertain the scope and breadth of these said limitations which is improper in a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings.

1

Plaintiff's arguments in the prosecution history do not limit the Plaintiff's patent infringement claims against Defendant and its Accused Instrumentality.

The decision whether equivalent subject matter is equivalent to the claimed subject matter is not properly decided in a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings because such a determination is a question of fact. Furthermore, claim vitiation does not apply in this case as the equivalent subject matter is an after arising technology that is not taught against in the claim language, not referenced in the specification or file history, and was unforeseeable at the time of the filing of the patents-in-suit as it was not contained in any of the prior art considered by the examiner. Determination of the foreseeability of the equivalent subject matter is a question of fact that cannot be determined on a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings.

Any construction of claim limitations should be reserved for a claim construction hearing in this case. Arguments that the carrier is limited to a physical carrier is obviated by the fact that Plaintiff is claiming that after-arising technology meets the carrier claim limitation. And it is impossible for the Botvin reference to meet the carrier limitation in the patents-in-suit.

Furthermore, the Defendant does not argue that the claim limitation "carrier" was amended to preclude the application in the digital realm after the Plaintiff disclosed that the first mobile deposit application was available in 2009. Therefore, the concept of after arising technology applies to the claim limitation "carrier" allows for the doctrine of equivalents to apply because the claim limitation "carrier" was not amended after the first mobile deposit application was made available to the public in 2009.

Additionally, this case is similar to the *Hughes IV* case in which certain claim limitations were obviated because of technology that obviated the need for those certain claim limitations.

Likewise, in this case, Defendant did not argue that the claim limitation "carrier" was amended after the first mobile deposit application was made available to the public in 2009. Therefore, doctrine of equivalents may apply to the "carrier" limitation. If doctrine of equivalents applies to the "carrier" limitation, then the claim limitations "secured to the carrier" and "front and back of the carrier" are obviated under *Hughes IV* due to the after arising technology which implemented a digital carrier.

Determination of infringement by the Defendant under the doctrine of equivalents is a question of fact and cannot be determined in a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings. Furthermore, a Fed. R. Civ. P. 12(c) Motion to Dismiss for Judgment on the Pleadings is not the proper vehicle to determine claim construction issues such as claim vitiation, doctrine of equivalents and claim term construction. Preliminary motions such as this should be reserved for those cases in which the patentee tries to apply doctrine of equivalents to an accused device that the patentee specifically disclaimed, or amended their claims to avoid the prior art that contained the equivalent device and that is not the case here.

For these reasons, Plaintiff seeks an order from this Court denying Defendant's motion to dismiss Plaintiff's Original Complaint.

## III.    STATEMENT OF FACTS

On October 12, 2019, Plaintiff filed its Original Complaint against Defendant BB&T Corporation *See* Dkt. No. 1. On June 25, 2020 Defendant Citizens Financial Group, Inc. filed a motion to dismiss Plaintiff's Original Complaint. *See* Dkt No. 40.

## IV.    ARGUMENT

### a.  Legal Standard

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." A motion for judgment on the pleadings under Rule 12(c) is subject to the same standard as a motion to dismiss under Rule 12(b)(6). *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). "A motion brought pursuant to Fed. R. Civ. P. 12(c) is designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter,* 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.,* 914 F.2d 74, 76 (5th Cir. 1990)). The Court must decide whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief. *Hughes v. Tobacco Inst., Inc.,* 278 F.3d 417, 420 (5th Cir. 2001) (*citing St. Paul Ins. Co. v. AFIA Worldwide Ins. Co.,* 937 F.2d 274, 279 (5th Cir. 1991)).

A finding of infringement under the doctrine of equivalents requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method. *AquaTex Industries, Inc. v. Techniche Solutions*, 479 F.3d 1320, 1382 (Fed. Cir. 2007) *see also Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605, 608 (1950) ("[A] patentee may invoke this doctrine [of equivalents] to proceed against the producer of a device 'if it performs substantially the same function in substantially the same way to obtain the same result.' " (*quoting Sanitary Refrigerator Co. v. Winters*, 280 U.S. 30, 42 (1929))). We have held that the function, way, result inquiry focuses on "an examination of the claim and the explanation of it found in the written description of the patent." *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 141 F.3d 1084,

1090 (Fed.Cir.1998); *see also Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*, 520 U.S. 17, 40 (1997) ("An analysis of the role played by each element in the context of the specific patent claim will thus inform the inquiry as to whether a substitute element matches the function, way, and result of the claimed element."). *See Techniche Solutions*, 479 F.3d at 1326.

"The patentee, as the author of the claim language, may be expected to draft claims encompassing readily known equivalents. A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *id*. at 740 (*citing Exhibit Supply Co. v. Ace Patents Corp.*, 315 U. S. 126, 136-137 (1942)).

The Supreme Court has created a rebuttable presumption that the patentee has given up "all subject matter between the broader and the narrower language" of an amended claim during prosecution to avoid a prior art reference or references. Implicitly, equivalent outside the range between the amended and the unamended claim are still available to the patentee. *See id.*

What equivalents are barred "requires an examination of the subject matter surrendered by the narrowing amendment." *id*. at 737. "The patentee should bear the burden of showing that the amendment does not surrender the particular equivalent in question." *id*. at 740.

In cases in which the amendment cannot reasonably be viewed as surrendering a particular equivalent—e. g., (1) where the equivalent was unforeseeable at the time of the application e.g. after-arising technology or (2) the rationale underlying the amendment bears but a tangential relation to the equivalent or (3) there is some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question—the patentee can rebut the presumption that prosecution history estoppel bars a finding of equivalence by showing

that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent. *See id*. at 741-742.

**b. Amendment-based estoppel does not apply.**

Even where an amendment is made to overcome relevant prior art during prosecution this fact may not foreclose the later application of the doctrine of equivalents to an accused infringing device. The first criterion requires a patentee to show that an alleged equivalent would have been "unforeseeable at the time of the amendment and thus beyond a fair interpretation of what was surrendered." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,* 535 U.S. 722 (2002). This criterion presents an objective inquiry, asking whether the alleged equivalent would have been unforeseeable to one of ordinary skill in the art at the time of the amendment. Usually, if the alleged equivalent represents later-developed technology (*e.g.,* transistors in relation to vacuum tubes, or Velcro® in relation to fasteners) or technology that was not known in the relevant art, then it would not have been foreseeable. In contrast, old technology, while not always foreseeable, would more likely have been foreseeable. Indeed, if the alleged equivalent were known in the prior art in the field of the invention, it certainly should have been foreseeable at the time of the amendment. *See Pioneer Magnetics, Inc. v. Micro Linear Corp.,* 330 F.3d 1352, 1357 (Fed.Cir.2003). By its very nature, objective unforeseeability depends on underlying factual issues relating to, for example, the state of the art and the understanding of a hypothetical person of ordinary skill in the art at the time of the amendment. Therefore, in determining whether an alleged equivalent would have been unforeseeable, a district court may hear expert testimony and consider other extrinsic evidence relating to the relevant factual inquiries. *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003).

There is not, nor has there ever been, a foreseeability limitation on the application of the doctrine of equivalents. Excluding equivalents that were foreseeable at the time of patenting would conflict with long-established holdings that known interchangeability weighs in favor of finding infringement under the doctrine of equivalents. *See Ring & Pinion Service Inc. v. ARB Corp.*, No. 13-1238 (Fed. Cir. Feb. 19, 2014).

The relevant prior art that was considered during the prosecution of the patents-in-suit did not teach a digital carrier or a software based mobile deposit application for depositing checks into a bank account. The foreseeability analysis is an objective one, therefore, even if Plaintiff knew about the mobile deposit applications made available to the public in 2009 then Plaintiff was under no duty to add this technology to its claims if the equivalent is not known in the relevant prior art. The purpose of amendment based estoppel is to estop the patentee from amending claim limitations during the prosecution of his patent to overcome relevant prior art, only to later claim that the art between the relevant prior art and his amendment during prosecution is the equivalent of what is claimed in the patent's claims.

Prosecution history estoppel is an affirmative defense. Asserting prosecution history estoppel may act to bar a Plaintiff from relying on the doctrine of equivalents to state a claim for patent infringement if no exception applies. Similarly, invalidity pursuant to 35 U.S.C. § 101 is an affirmative defense. Defendant has presented its affirmative defense in the form of a Fed. R. Civ. P. 12(c) motion to dismiss Plaintiff's Original Complaint. Any questions of fact must be resolved before a proper determination of a motion to dismiss can be made and cannot be resolved by the Court at the motion to dismiss stage without the aid of discovery. Questions of fact require evidence. Evidence must be collected through discovery. Discovery includes document requests, interrogatories, experts, depositions, and so forth. Most importantly, discovery sweeps in evidence,

facts and tidbits that are neither in the complaint nor the patent. Since a Fed. R. Civ. P. 12(c) motion to dismiss cannot rely upon facts outside of the complaint or patent then a question of fact presented in a motion to dismiss that cannot be determined in the complaint or patent requires denial of the motion. *See Berkheimer v. HP Inc.*, 881 F.3d 1360 (Fed. Cir. 2018); *Aatrix Software v. Green Shades Software*, No. 17-1452 (Fed. Cir. 2018) (as a basis for its denial of defendant's motion the Court in *Berkheimer*, and the *Aatrix* Court also confirmed that, even though the § 101 question is one of law, the subsidiary question of whether the patents claim ***routine and conventional technology*** is itself a question of fact that must be determined by the jury). As seen in *Berkheimer* and *Aatrix* questions of fact are detrimental to 12(b)(6) motions to dismiss and motions for summary judgment and similarly 12(c) motions.

Whether the equivalent was ***unforeseeable at the time of the application or amendment*** is a question of fact that must be determined by the jury or on summary judgment based on a rational juror standard when the parties have had the opportunity to present evidence and not by the Court at the motion to dismiss stage without the benefit of discovery or the ability to present evidence or even notice that the parties would be litigating on the pleadings. Therefore, presentation of amendment-based estoppel at the motion to dismiss stage is always improper where foreseeability of the accused instrumentality is at issue similar to the fact issue identified in *Berkheimer* and *Aatrix*. None of the cases that Defendant cites in its motion are cases decided based on a Fed. R. Civ. P. 12(b)(6) or 12(c) motion to dismiss a complaint pre-answer by amendment-based prosecution history estoppel when foreseeability is at issue.

A primary justification for the doctrine of equivalents is to accommodate after-arising technology. Without a doctrine of equivalents, any claim drafted in current technological terms could be easily circumvented after the advent of an advance in technology. By way of example,

"a claim using the terms "anode" and "cathode" from tube technology would lack the "collectors" and "emitters" of transistor technology that emerged in 1948. Thus, without a doctrine of equivalents, infringers in 1949 would have unfettered license to appropriate all patented technology using the outdated terms "cathode" and "anode"."

*Ring & Pinion Service Inc. v. ARB Corp.,* No. 13-1238 (Fed. Cir. Feb. 19, 2014).

Defendant argues that the amendment of claim 40 (issued as claim 1) to require an identifier "on a front side and back side of the carrier" raises a presumption that prosecution history estoppel applies and that Plaintiff surrendered all equivalents that do not literally include an identifier on a front and back side of a carrier. *See* DKT #12-1, Case No. 6:19-cv-00606-ADA, '698 Patent File History, 2010-06-02 Office Action Response at 8. Defendant also argues that the amendment of claim 1 to require the carrier to receive "a plurality of negotiable instruments" and permit "one front image" and "one back image of all the negotiable instruments to be generated." DKT#77-1, Case No. 2:19-CV-0250-JRG-RSP, '940 Patent File History, Response dated 2013-02-14 at 33 (emphasis in original).

The presumption can be rebutted by showing that the claimed equivalent was unforeseeable. This can be shown by consideration of whether the stated amendment was made by the patentee to avoid the application of prior art. If the prior art considered by the examiner i.e. relevant art, did not include the claimed equivalent, then a fact finder can find that the equivalent was unforeseeable to one of ordinary skill in the art at the time of the amendment. *See Pioneer Magnetics, Inc. v. Micro Linear Corp.,* 330 F.3d 1352, 1357 (Fed.Cir.2003).

If a fact finder can find that the equivalent was unforeseeable then the Plaintiff not only survives summary judgment on this issue, but also survives this Fed. R. Civ. P. 12(c) motion to dismiss. *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003). The Court should not be in the business of deciding facts that a rational jury can decide.

In addition, Defendant fails to consider that the claim term "carrier" itself was not amended after August of 2009 when mobile deposit applications were made available to the public. This coupled with the fact that none of the prior art considered by the examiner included software or applications for depositing checks remotely, the issue of foreseeability clearly at issue.

Additionally, once it is determined that the doctrine of equivalents can be applied to the claim term "carrier" itself, then the other claim limitations may be obviated due to the carrier no longer being a physical thing. This case is similar to the *Hughes VII* case which concluded that the transmission to the ground crew of the spin rate and information sufficient to calculate the sun angle in the S/E vehicles "is the modern day equivalent to providing an indication of the ISA to the ground . . . ." *Hughes Aircraft Co. v. United States*, 717 F.2d 1351, 1365 (Fed. Cir. 1983). This information, while insufficient to calculate the ISA position, was sufficient to enable the ground crew to control the satellite, which is substantially the same function performed and the identical result achieved by transmitting the indication of the ISA position to the ground. *Hughes Aircraft Co. v. United States*, 717 F.2d 1351 (Fed. Cir. 1983).

The court in *Hughes VII* determined that the change in the S/E devices was the result of a technological advance not available until after the patent issued. *See Hughes VII*, 717 F.2d at 1365. Relying on testimony of one of skill in the art at the time of infringement, the court in *Hughes VII* concluded that this advance resulted in an insubstantial change in the way the element performed its function. *See id.* (citing testimony that an engineer would realize that transmission of the ISA position was no longer necessary as a result of the change in technology).

The court in *Hughes VII* also concluded that the "synchronism" limitations in paragraphs (f) and (g) were also equivalently met by the accused devices. Again, as a result of an advance in technology, the satellite system was able at the time of infringement to store the precession

10

information and to wait to precess the satellite until receipt of the execute command. Thus, the synchronism in the accused device is coordinated by the computer instead of by real-time execution of the command from the ground. As recognized in *Hughes VII*, "the difference between operation by retention and operation by sending is achieved by relocating the function, making no change in the function performed, or in the basic manner of operation, or in the result obtained." *id*. at 1366.

In order to apply *Hughes VII*, the fact finder must determine whether the change between what is done in the accused devices is either substantially or insubstantially different than what is claimed in the patents-in-suit. This cannot be done on a Fed. R. Civ. P. 12(b)(6) or 12(c) motion to dismiss.

Prior art, and current state of the art suggest that the art being discussed is on a time continuum similar to a timeline. Defendant would have the Court believe that the relevant art is similar to a mine field where the claims cover one mine, and once a claim term is amended then this forecloses the patentee from claiming later that any mine in the mine field is an equivalent. This is not the law. The law states that if a patentee can show that the claimed equivalent is not in the prior art considered during prosecution, and the equivalent was recently discovered art, making it unlikely to be in any other art that would be considered prior art, then this is sufficient to show that the equivalent was unforeseeable by one of ordinary skill in the art. The Defendant cites to caselaw to show that the fact finder must determine foreseeability at the time of the amendment. This is true, but what that means is that the fact finder can find that the equivalent was unforeseeable if at the time of the amendment the equivalent was not in the prior art considered by the examiner which it was not for any of the amendments in the prosecution history of the patents-in-suit. As mentioned previously, even if the amendment was made a few years after the equivalent

was made available to the public the fact that the examiner didn't consider it, and the fact that the technology was new, suggests that the equivalent still was unforeseeable to not only the patentee but also one of ordinary skill in the art at the time of the amendment in question. If there is any question as to whether the equivalent was foreseeable then this creates an issue of fact not to be considered at the motion to dismiss stage.

In fact, *Festo* states as much, "Therefore, in determining whether an alleged equivalent would have been unforeseeable, a district court may hear expert testimony and consider other extrinsic evidence relating to the relevant factual inquiries." Festo *Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 344 F.3d 1359, 1369 (Fed. Cir. 2003). The *Festo* court held that "because there exists factual issues relating to the objective unforeseeability of the two accused equivalents, we remand to the district court to determine whether *Festo* can rebut the presumption of surrender by demonstrating that the accused device's aluminum sleeve and sealing ring elements would have been unforeseeable to a person of ordinary skill in the art at the time of the amendments. *id.* at 1370-71.

There are unresolved questions of fact that are not apparent from the complaint or the patent that must be resolved in order to determine whether the accused instrumentality was foreseeable at the time of the amendments in the prosecution history of the patents-in-suit.

Even if the Court determines based on the facts in Plaintiff's operative Complaint in this case, the patents-in-suit and the file history disclose enough facts to sufficiently show that the Accused Instrumentality was foreseeable at the time of the amendment made in the '940 patent application this still doesn't bar Plaintiff's amendment. *See Ring & Pinion Service Inc. v. ARB Corp.*, No. 13-1238 (Fed. Cir. Feb. 19, 2014) (There is not, nor has there ever been, a foreseeability limitation on the application of the doctrine of equivalents. Excluding equivalents that were

foreseeable at the time of patenting would conflict with long-established holdings that known interchangeability weighs in favor of finding infringement under the doctrine of equivalents.).

If the Court rules that there must be unforeseeability in order to avoid the application of prosecution history estoppel then this would require every application of the doctrine of equivalents to show that the equivalent to which it is being applied was unforeseeable at the time of any amendment. This would work against the 100 years of case law finding that the reason for the estoppel bar is to foreclose the patentee from avoiding prior art during prosecution only to later claim that the art that was avoided included the claimed equivalent. *See Ring & Pinion Service Inc. v. ARB Corp.*, No. 13-1238 (Fed. Cir. Feb. 19, 2014) (There is not, nor has there ever been, a foreseeability limitation on the application of the doctrine of equivalents.).

The claim construction of the claim limitation "secured to" is in dispute and the claim limitation "carrier" is in dispute. In Defendant's motion it proffers its own construction of "carrier" and "secures to" and makes the conclusion that it is impossible for a check to be secured to the carrier in the accused instrumentality. Defendant also makes the conclusion that the accused instrumentality doesn't have a carrier and therefore, "not being secured to a carrier cannot be equivalent to "secured to a carrier". Therefore, there is a factual dispute as to whether the accused instrumentality in this case incorporates a carrier which requires additional discovery, and the construction of at least the claim limitation "carrier" and whether an image of a negotiable instrument can be "secured to" the carrier as eventually construed by the Court.

Therefore, whether amendment-based prosecution history estoppel applies cannot be determined in this motion to dismiss or in the alternative does not apply in this case.

**c.    Argument-based estoppel.**

The CAFC has declined to apply the doctrine of prosecution disclaimer where the alleged disavowal of claim scope is ambiguous. *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1324 (Fed. Cir. 2003).

Defendant's motion attempts to show that argument-based estoppel applies because of a statement that Plaintiff made to the examiner during prosecution. Defendant alleges that "Plaintiff unequivocally described the carrier as a tangible, physical object: "[i]n particular, after the negotiable instruments are inserted or attached to the carrier, as noted in paragraph [0074], ***the carrier is placed into a fax machine, for scanning both the front and backside***."" DKT #12-2, Case No. 6:19-cv-00606-ADA at 7, '940 Patent File History, 2013-2-14 Office Action Response at 8 (emphasis added).

Defendant makes a determination of fact by its attempt to limit Plaintiff's invention to a tangible carrier because Plaintiff described it in the prosecution history by stating that "***the carrier is placed into a fax machine, for scanning both the front and backside***.". The equivalent technology in this case did not exist at the time of the filing of the patents-in-suit. Plaintiff was not disclaiming unforeseeable equivalents when it described its carrier in the prosecution history. By making this argument Defendant is presuming that the accused instrumentality in this case was foreseeable by one of ordinary skill in the art at the time the statements were made in the prosecution history of the patents-in-suit which is a question of fact that cannot be determined by the Court.

Next, Defendant alleges that Plaintiff argued during the prosecution of the '940 patent that Schmidt *et. al*. fail to teach a system that can remotely deposit a plurality of negotiable instruments using one carrier that can accommodate multiple negotiable instruments. Defendant attempts to provide a citation to the '940 patent prosecution file history but the citation is incorrect and the

14

alleged statement of the Plaintiff alleged by Defendant is not located where Defendant says it is located. In fact, the prosecution file history of the '940 Patent does not include the document that Defendant cites to. The prosecution file history of the '698 Patent does include the document cited by Defendant but no where does it mention the Schmidt *et. al*. reference.

Defendant also claims that argument-based estoppel applies to this case by alleging that the patentee for the patents-in-suit surrendered subject matter by arguing that the reference Botvin, U.S. Patent No. 5,594,225, does not secure a negotiable instrument to a carrier. *See* Defendant's Motion at 8. In fact, the Botvin claims do not disclose a carrier or unique identifiers.

The Botvin claim language is below:

"A method of conducting financial transactions of a commercial paper document having a drawer party, a drawee party and a payee party, comprising the steps of: (a) delivering an image of the commercial paper document to a payee party; (b) electronically delivering an image of the commercial paper document from a facsimile machine at the site of the drawer to a facsimile machine at the site of the drawee party; (c) processing the image of the commercial paper document using a computer responding to software commands for retrieving electronically encrypted information contained on the commercial paper document; and (d) clearing the financial transaction by the drawee party after receiving a request for payment of the commercial document from the payee party or party with title to the document by comparing the information received from the drawer party image with the image presented for payment on a computer responding to software commands."

*See* U.S. Patent No. 5,594,225.

Defendant makes a determination of fact, by alleging that Plaintiff cannot argue that a mobile application, to which one cannot possibly secure a negotiable instrument is the same as generating and transmitting an image of a check where the check is secured to a carrier. Defendant presents a question of fact, that a "mobile application does not secure an image of a negotiable instrument to a carrier" in essence arguing that its product does not have a carrier. Botvin discloses no carrier which means that Botvin does not disclose "securing a negotiable instrument to a carrier". Therefore, what the patentee surrendered was subject matter without a carrier. Not subject

matter that has a carrier but where the negotiable instrument is not secured to the carrier as is indicated by the defendant in its allegation in its motion.

It is impossible for the Botvin reference to meet the carrier limitation as Defendant has alleged in its motion. *See* Defendant's Motion at 13.

The Botvin reference claims:

> "(a) delivering an image of the commercial paper document to a payee party; (b) electronically delivering an image of the commercial paper document from a facsimile machine at the site of the drawer to a facsimile machine at the site of the drawee party; (c) processing the image of the commercial paper document using a computer responding to software commands for retrieving electronically encrypted information contained on the commercial paper document; and (d) clearing the financial transaction by the drawee party after receiving a request for payment of the commercial document from the payee party or party with title to the document by comparing the information received from the drawer party image with the image presented for payment on a computer responding to software commands."

*See* U.S. Patent No. 5,594,225.

In the Botvin reference the claims require that the image of the commercial paper document be delivered to the drawee party via fax, then the image is processed using the software that Defendant says is able to meet the carrier limitation. This is impossible because the carrier limitation must be incorporated before the check images are transmitted to the drawer party. Once the check images arrive at the drawer party, where the Botvin reference software resides, it is too late to incorporate a carrier as claimed in the patents-in-suit.

## V. CONCLUSION

For the forgoing reasons, Plaintiff requests that the Court deny Defendant's motion to dismiss Plaintiff's Complaint.

Dated: July 9, 2020                                Respectfully submitted,

                                                   By: */s/ Austin Hansley*
                                                   **HANSLEY LAW FIRM, PLLC**

Austin Hansley
Texas Bar No.: 24073081
2931 Ridge Rd. STE 101 #530
Rockwall, Texas 75032
Telephone: (972) 528-9321 Ext. 1000
Facsimile: (972) 370-3559
Email: ahansley@hansleyfirm.com
www.hansleyfirm.com
**ATTORNEY FOR PLAINTIFF**
**LIGHTHOUSE CONSULTING GROUP, LLC**

## CERTIFICATE OF SERVICE

I hereby certify that on July 9, 2020, I electronically filed the foregoing document with the clerk of the court for the U.S. District Court, Western District of Texas, Waco Division, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the attorneys of record who have consented in writing to accept this Notice as service of this document by electronic means.

/s/ *Austin Hansley*
Austin Hansley